UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE JAMES,

                Plaintiff,                      No. 03-CV-73340-DT

vs.                                       Hon. Gerald E. Rosen

DAIMLERCHRYSLER CORPORATION
and DAIMLERCHRYSLER TRANSPORT, INC.,

                Defendants.

_____/

OPINION AND ORDER GRANTING
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on      August 18, 2005         

PRESENT:  Honorable Gerald E. Rosen
                  United States District Judge

I.  <u>INTRODUCTION</u>

The above-captioned matter is presently before the Court on the Motion filed by

DaimlerChrysler Corporation and DaimlerChrysler Transport, Inc. (collectively referred

to herein as "DaimlerChrysler") seeking entry of summary judgment in their favor on

Plaintiff's claims of violation of the Americans with Disabilities Act (the "ADA") and

the Michigan Persons With Disabilities Civil Rights Act (the "PWDCRA"). Plaintiff's

ADA and PWDCRA claims in Counts II, III, V and VI of Plaintiff's Amended Complaint

1

are the only claims remaining in this action.[1]

Plaintiff has responded to Defendants' Motion, to which response Defendants have replied. Having reviewed and considered the parties' briefs and supporting evidence, and having heard the oral arguments of counsel on August 18, 2005, the Court is now prepared to rule on this matter. This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS

Plaintiff George James is a former truck driver employed by Defendant DaimlerChrysler Transport, Inc. In 2000, Mr. James was assigned to a route from the Transport truck terminal on Lynch Road in Detroit to the DaimlerChrysler Marysville Parts Depot, a route of approximately 120 miles a day. Mr. James was injured on the job on April 4, 2000. On that date, Plaintiff had driven to the Marysville facility and was cranking down the dolly legs to stabilize his parked trailer when a "switcher" truck which was used to move empty or loaded trailers to and from the facility's dock that was driven by another DaimlerChrysler employee accidentally rolled back on its chassis and pinned Mr. James against his own trailer, causing injuries to his back and chest. Emergency personnel were summoned to the scene and Plaintiff was hospitalized for approximately one week.

---

[1] On December 22, 2004, the Court entered an Opinion and Order granting partial summary judgment in favor of Defendants and dismissing Counts I and IV (Plaintiff's common law claims of gross negligence) based upon Michigan's three-year statute of limitations for injury to person or property, M.C.L. § 600.5805(10).

2

Plaintiff collected workers' compensation for the injury and remained off work for nine months.  Upon his return to work in January 2001, Mr. James was once again assigned his Marysville route without any physical restrictions.  Shortly thereafter, Mr. James was given a new truck to drive, identified as "Truck 1153."  This new truck had a firm, new driver's seat with a built-in power lumbar support system.  Plaintiff testified that he was very pleased with this feature of the new truck and he was able to drive his route as usual without any complications.  [Plaintiff's Dep., pp. 90-91].  In fact, Plaintiff testified that he frequently volunteered for overtime and worked six days a week.

Subsequently, DaimlerChrysler Transport gave notice to its employees that it was discontinuing the Marysville run.  Accordingly, Plaintiff was required to bid on a new job during a special bid process.  Bidding was based solely on seniority pursuant to the terms of the collective bargaining agreement between DaimlerChrysler Transport and the UAW.  Plaintiff had one of the highest seniority dates of any of his co-workers.  Accordingly, he was able to bid for any job/route he desired.

Plaintiff successfully bid for the "Sterling Shuttle" run, which involved driving a truck to and from the Sterling Stamping Plant and the Sterling Heights Assembly Plant, a route which required Plaintiff to drive no more than 15 miles a day.  Plaintiff considered this route very desirable because it was very short, easy, and conveniently located -- it was only a seven-minute drive from Plaintiff's house to work.  *See* Plaintiff's Dep., p. 94.  However, by electing the Sterling Shuttle route, Plaintiff gave up his right to continue

3

driving Truck 1153.  For the Sterling Shuttle run, Plaintiff was assigned Truck 1009.

After three or four weeks driving Truck 1009 on the Sterling Shuttle run, Plaintiff approached DaimlerChrysler Transport Operations Manager David Costello and requested that his former Truck 1153 be redeployed for him to use on the Sterling Shuttle route.  At the time that he made this request, Plaintiff presented Costello with a doctor's note outlining Mr. James' need for a firm truck seat "such as available in new transport model trucks."  *See* Defendant's Ex. B.[2]  However, as Plaintiff admitted in his deposition, his doctor did not place him on any physical restrictions[3] at that time or otherwise indicate any limitation on Plaintiff's continued driving.  *See* Plaintiff's Dep., p, 147.  *See also* Costello Dep., p. 60.  Plaintiff merely claimed that he was experiencing some back pain driving Truck 1009.  *Id*. at p. 12.

Costello agreed to look into Plaintiff's request for redeployment of Truck 1153 but did not make any promises or commitments to Plaintiff.  *Id*. at 58.  Costello admitted in his deposition that he knew that granting Plaintiff's request would have repercussions for management, to the extent that it would cause him to lose control of the facility's

---

[2]  Dr. Nebel's note indicates that the doctor did not examine Plaintiff prior to writing the note; he refers to a "phone conversation recently" in which Plaintiff told him that "he is having difficulty working because of increased back pain."  The doctor did not assert that Plaintiff could only continue to work with certain physical restrictions; rather, he stated only, "I believe it would be prudent to allow him to have available the newer type of truck with the firm seats so as to avoid aggravation of his low lumbar condition."  *See* Defendant's Ex. B.

[3]  Plaintiff and all other deponents referred to medical restrictions as "PQXs" -- physical qualifications exceptions.  *See e.g.,* Plaintiff's Dep., p. 93.

4

equipment and would further set a precedent for other drivers -- all of whom would prefer to have new vehicles -- to simply claim back pain, get a doctor's note, and make the same request. Costello also testified that he found it impractical and inefficient to deploy Truck 1153 to such a short route as the Sterling Shuttle. While it made sense to dedicate that truck to the much longer runs such as the Marysville run, it was not a prudent use of equipment for the short Sterling run. Costello Dep., p. 65.

Plaintiff admitted that some trucks were designated for shuttles between Plants and some were designated for longer runs. Plaintiff's Dep., p. 42. He further admitted that when a driver bid for a job, he did not have just any truck in the fleet to choose from, but in fact, certain trucks were assigned to certain runs. *Id.* at 43. Thus, when bidding for a job, the drivers know what trucks are available for that job. *Id.* at 44.

Costello informed Plaintiff that he could not justify redeploying Truck 1153 to his Sterling Shuttle run, but would try to find a way to accommodate him by either replacing the seat in Plaintiff's Truck 1009 with one similar to the one in Truck 1153, or refurbishing the existing seat.

The first option -- replacement of the seat -- proved not to be feasible because the bolt patterns were different in Truck 1153 and Truck 1009, making it unsafe to install a 1153 seat. The second option -- refurbishing of the 1009 seat -- was possible and was in fact done by early August 2001. Plaintiff claimed that the refurbished seat was a little better but he still found it unacceptable. *See* Costello Dep., p. 34. Plaintiff was also

offered a separate lumbar seat cushion, but he refused to use it.  *Id*. at 27-28.[4]  Finally,

Costello reminded Plaintiff that another option was available: he could give up the

Sterling Shuttle route and re-bid for whatever truck route Truck 1153 was committed to

(or he could pursue a non-truck driving job within the Transport terminal).  Plaintiff

rejected this option, choosing instead to stay on the Sterling Shuttle because that job was

"a piece of cake."  Plaintiff's Dep., p. 114. Plaintiff further explained his rejection of this

last option as follows:

> Q:     . . . [Y]ou were satisfied with [Truck] 1153, correct?
> A [by Plaintiff]:  Yes, sir.
> Q:     That was a good truck, that accommodated whatever injuries you had?
> A:     Brand new, yes, sir.
> Q:     Did you explore the option of just saying I'll follow 1153 wherever
>        you assign it, I just want to keep driving this truck?
> A:     No.  Why would I want to do that?
> Q:     Well, because it was a comfortable truck for you?
> A:     Yeah, but it might go on a dirty job.
> Q:     So your primary concern was to find a job that was most likable to
>        you?
> A:     That is what seniority is all about.

*Id.* at 172-73.

    In August 2001, Plaintiff successfully re-bid for the Sterling Shuttle job.[5]

However, this time, Plaintiff's route started at the Sterling Heights Assembly Plant

instead of at the Sterling Stamping Plant.  As a consequence of the new starting point,

---

    [4] Plaintiff rejected a similar recommendation by his own doctor to create a
supportive roll cushion for his back.  *See* Plaintiff's Dep. p. 110.

    [5] According to the CBA, jobs are opened for regular bidding twice each year, in
February and again in August.  *See* Affidavit of Daniel Meyka and Ex. 1 attached thereto.

Plaintiff was assigned yet a different truck, Truck 1014.  This truck was essentially in the same condition as Truck 1009.  Meanwhile, DaimlerChrysler Transport management continued to meet with Plaintiff to discuss his various options, none of which satisfied Plaintiff; he wanted his former truck, Truck 1153, and nothing else.  After being once again informed by management that they could not reassign him to Truck 1153, Plaintiff again went back to his doctor and asked him for another note.

In September 2001, Plaintiff presented Costello with another note from his doctor. This note was handwritten on a prescription pad and stated:

> Please consider allowing use of a New Tractor on Mr. G. James assigned job for the next 7 months[6] to keep G. J. productive, particularly since the need for this tractor seat suspension complex is due to the extensive injury 4-4-01 [sic; 00].  This gives a good specific reason for this use.

Defendants' Ex. C.

At the same time, Plaintiff also presented a "work restriction" from his doctor for his "back pain" requiring that he be off work from September 19, 2001 to October 22, 2001.  *See* Defendants' Ex. D.  This was the first, and only, time that Plaintiff was off work for medical reasons (other than his earlier workers' disability leave immediately following the April 2000 accident).[7]  He was released back to work, however, after

---

[6]  Plaintiff had asked his doctor to write the request for seven months because in seven months, i.e., April 2002, he would have his 30 years of service and be entitled to voluntary retirement.

[7]  Plaintiff's other breaks in employment were due to (1) his acceptance in July 2001 of an "inverse layoff," which is a collectively bargained arrangement pursuant to which, as a very senior employee, Plaintiff was allowed to volunteer to be temporarily

October 22 with no restrictions whatsoever.

In December 2001, Plaintiff applied for Re-Certification of his truck driver's license and passed the physical examination required for Re-Certification.  On his application, Plaintiff denied having any back or other physical problems.  *See* Defendant's Ex. E.

In April 2002, Plaintiff voluntarily retired after 30 years of service.  Plaintiff testified in his deposition that his retirement was unrelated to his dispute with DaimlerChrysler management over Truck 1153 or his alleged requests for accommodation in 2001.  He admitted that he had always intended to retire after 30 years of service and planned to retire in April 2002 even before the accident happened.  *Id.* at 111-112.  He said that he had made the decision to retire once he had 30 years of service in 1997.  *Id.* at 112.

## III.  DISCUSSION

### A.  STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper "'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  Fed. R. Civ. P. 56(c).

Three 1986 Supreme Court cases -- *Matsushita Electrical Industrial Co. v. Zenith*

---

laid off, and (2) vacations he took in November and December 2001.

*Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986);

and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) -- ushered in a "new era" in the

standards of review for a summary judgment motion.  These cases, in the aggregate,

lowered the movant's burden on a summary judgment motion.[8]  According to the *Celotex*

Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion, against a party who
> fails to make a showing sufficient to establish the existence of an element essential
> to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322.

After reviewing the above trilogy, the Sixth Circuit established a series of

principles to be applied to motions for summary judgment.  They are summarized as

follows:

> * The movant must meet the initial burden of showing "the absence of a genuine
> issue of material fact" as to an essential element of the non-movant's case.  This
> burden may be met by pointing out to the court that the respondent, having had
> sufficient opportunity for discovery, has no evidence to support an essential
> element of his or her case.

> * The respondent cannot rely on the hope that the trier of fact will disbelieve the
> movant's denial of a disputed fact, but must "present affirmative evidence in order
> to defeat a properly supported motion for summary judgment."

> * The trial court no longer has the duty to search the entire record to establish that
> it is bereft of a genuine issue of material fact.

---

[8]"Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials."  10A C. Wright, A. Miller, M. Kane, <u>Federal Practice & Procedure</u>, § 2727, at 35 (1996 Supp.).

* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Betkerur v. Aultman Hospital Association*, 78 F.3d 1079, 1087 (6th Cir. 1996). *See also,*

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). The Court will

apply the foregoing standards in deciding Defendants' Motion for Summary Judgment in

this case.

B.    PLAINTIFF HAS FAILED TO MAKE OUT A *PRIMA FACIE* CASE OF
       DISCRIMINATION UNDER THE ADA

Under the ADA, "[n]o covered entity shall discriminate against a qualified

individual with a disability because of the disability of such individual in regard to job

application procedures, the hiring, advancement, or discharge of employees, employee

compensation, job training, and other terms, conditions, and privileges of employment."

42 U.S.C. § 12112(a). The ADA definition of the term "discriminate" includes "not

making reasonable accommodations to the known physical or mental limitations of an

otherwise qualified individual with a disability who is an applicant or an employee,

unless such covered entity can demonstrate that the accommodation would impose an

undue hardship on the operation of the business of the covered entity." *Id*. at §

12112(b)(5). Therefore, to prevail on a failure to accommodate claim requires that the

plaintiff first show that he is a "qualified individual with a disability." *Rossi v. Alcoa,*

*Inc.,* 129 Fed. Appx. 154, 157 (6th Cir. 2005). *See also Smith v. Ameritech*, 129 F.3d

10

857, 866 (6th Cir. 1997) (a plaintiff must be a disabled person within the meaning of the ADA in order to recover on a claim of failure to accommodate or a claim of discriminatory termination.)

The ADA definition of "disability" requires a plaintiff to have a condition that substantially limits a major life activity.  42 U.S.C.§ 12102(2)(A).[9]  Thus, the mere fact that a plaintiff has a recognized "physical or mental impairment" in and of itself is  not enough to establish that he has an ADA-cognizable "disability."  The plaintiff must also establish that his or her impairment "substantially limits" a "major life activity."  *Id*.  § 12102(2)(A); *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184,195, 122 S.Ct. 681, 690 (2002).  "Under the ADA, not all limitations are substantial."  *Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996).

The ADA regulations define the term "substantially limits" as meaning "(i) unable to perform a major life activity that the average person in the general population can perform;  or (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as

---

[9]  The ADA defines "disability" to include "a physical or mental impairment that substantially limits one or more of the major life activities of such individual."  42 U.S.C. § 12102(2)(A).

Major life activities are defined in the regulations as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

11

compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."  29 C.F.R. § 1630.2(j)(1). The Supreme Court has further interpreted the phrase "significantly limits" as requiring a showing of a "considerable" limitation or one that limits a major life activity "to a large degree."  *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 2150 (1999).[10] However, temporary physical conditions, even those that may possibly recur, do not generally constitute substantial impairments. *Plant v. Morton International, Inc.,* 212 F.3d 929, 938 (6th Cir. 2000);  *See also*, 29 C.F.R. § 1630.2(j) App.

As more fully developed below, applying the foregoing authorities to the facts as alleged by Plaintiff in this case, the Court finds that Plaintiff is not a "disabled" person within the meaning of the federal statute.

With regard to the major life activity of working -- which is the only major life activity put at issue by Plaintiff James in this case -- the term "substantially limits" means:

---

[10]  The ADA regulations further set forth the following factors to be considered in determining whether an individual is substantially limited in a major life activity:  (i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2).  *See also, Roush v. Weastec, Inc.*, 96 F.3d 840, 843 (6th Cir. 1996).  Further, the Supreme Court has ruled that in determining whether an individual is substantially limited by an impairment  that affects a major life activity, the plaintiff is to be evaluated in his or her medicated state. *Murphy v. United Parcel Service*, *Inc.*, 527 U.S. 516, 119 S.Ct. 2133, 2137 (1999); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 2146 (1999).  *See also, Gilday v. Mecosta County*, 124 F.3d 760, 767 (6th Cir. 1997).

> significantly restricted in the ability to perform either a class of jobs or a
> broad range of jobs in various classes as compared to the average person
> having comparable training, skills and ability.  <u>The inability to perform a</u>
> <u>single, particular job does **not** constitute a substantial limitation in the major</u>
> <u>life activity of working</u>.

29 C.F.R. § 1630.2(j)(3)(i) (emphasis added).  *See also, Sutton v. United Air Lines, supra*

("When the major life activity under consideration is that of working, the statutory phrase

"substantially limits" requires, at a minimum, that plaintiffs allege they are unable to

work in a broad class of jobs."  119 S.Ct. at 2150); *Welsh v. City of Tulsa*, 977 F.2d 1415,

1417 (10th Cir. 1992) (being substantially limited in the major life activity of working

does not mean working at a job of one's choice).

    The regulations further instruct that to determine whether a plaintiff is

substantially limited in the major life activity of working,  a court may consider:

> the number of types of jobs utilizing similar training, knowledge, skills or
> abilities, within the [plaintiff's] geographic area from which the individual
> is also disqualified because of the impairment (class of jobs).

19 C.F.R. § 1630.2(j)(3)(ii)(B).  The court may also consider:

> the numbers and types of other jobs *not* utilizing similar training,
> knowledge, skills or abilities, within that geographic area, from which the
> individual is also disqualified because of the impairment (broad range of
> jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii)(C) (emphasis added).

    Consistent with the foregoing, courts have concluded that the major life activity of

working is not substantially limited simply because an employee's physical or

psychological impairment prevents him from performing a particular job.  *See Sutton v.*

*United Air Lines, supra* (plaintiffs' severe myopia only prevented them from working as global airline pilots);  *Mahon v. Crowell*, 295 F.3d 585 (6th Cir. 2002) (plaintiff's back problems held not to substantially limit his ability to work in a broad class of jobs); *Black v. Roadway Express, Inc.*, 297 F.3d 445, 452-53 (6th Cir. 2002) (plaintiff's knee injury did not prevent him from performing a broad class of truck driving jobs); *McKay v. Toyota Motor Manufacturing U.S.A., Inc*., 110 F.3d 369, 373 (6th Cir. 1997) (plaintiff's carpal tunnel syndrom which only prevented her from performing a narrow range of assembly line jobs held not to be an impairment that substantially limited her ability to work, in general); *Jasany v. United States Postal Service*, 755 F.2d 1244, 1250 (6th Cir. 1980) (where plaintiff's eye impairment, although a permanent one which prevented him from performing the functions of a Postal Service Distribution Clerk, did not interfere with his ability to work in other jobs, he was not substantially limited in the life activity of working); *Wooten v. Farmland Foods*, 58 F.3d 382, 383 (8th Cir. 1995) (finding impairment of the plaintiff's hand which interfered with the ability to perform a narrow range of meat packing jobs was not a substantially limiting major life function); *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723 (5th Cir. 1995) (plaintiff who lost use of her right arm due to a gun accident was not substantially limited in the life activity of working where she failed to show that her impairment disqualified from other jobs requiring similar training); *Sorensen v. University of Utah Hospital*, 194 F.3d 1084 (10th Cir. 1999) (although plaintiff with multiple sclerosis had a cognizable physical impairment, she was not disabled under the ADA where her disability did not disqualify her from performing

14

other jobs for which she qualified by virtue of her education and training.)  *See also Lane v. Bell County Bd. of Educ.*,  72 Fed. Appx. 389, 396-7 (6th Cir. 2003) (plaintiff's evidence which showed only that she could not teach under the conditions in her particular room at Yellow Creek Elementary School failed to establish that she was restricted in the major life activity of working. Therefore, her claim that the defendants failed to accommodate her had no merit, there being nothing to accommodate, within the meaning of the ADA.)

The foregoing authorities make clear that the mere fact that Plaintiff has a physical impairment is not sufficient to establish that he is "disabled" under the ADA.  As the Second Circuit explained in *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867 (2nd Cir. 1998),

> Although almost any impairment may, of course, in some way affect a major life activity, the ADA clearly does not consider every impaired person to be disabled.

*Id.* at 870.

Thus, although Plaintiff's back problem may constitute a "physical impairment," Plaintiff has failed to establish that his physical impairment substantially limits him in the life activity of working.  That Plaintiff has failed to establish this requisite element is particularly glaring in this case where Plaintiff returned to work as soon as he was able to do so after his on-the-job accident and continued  to work continuously thereafter with only one month off due to his alleged back pain in the ensuing year and a half.  Indeed, by his own admission, his back pain did not substantially limit him in the life activity of working.  Plaintiff testified that when he returned to work in January 2001, he "felt pretty

good" and was cleared to work his "regular duties" without any physical restrictions. Plaintiff's Dep., pp. 87-88, 108-109.  He continued thereafter to work a regular eight-hour per day schedule and also frequently worked overtime by choice.  *Id.* at 92.  When he voluntarily bid for a new truck route in 2001 and was assigned to a different truck, although he complained of an uncomfortable truck seat, he still continued to work every day.  *Id.* at 102-103.  And, except for a one month off in September-October 2001, he continued working in the same, unrestricted fashion until his retirement in April 2002.  *Id.* at 103-104, 113, 136.  An employee who has worked continuously without taking time off because of his alleged disability is not substantially limited in his ability to work. *Cotter v. Ajilon Services, Inc.*, 287 F.3d 593, 598 (6th Cir. 2002).

Plaintiff points to his doctor's directive that he try to avoid "long periods of sitting" as evidence of his being substantially limited in his ability to work.  Contrary to Plaintiff's assertion, this is legally insufficient to establish a disability cognizable under the ADA.  *See Cotter v. Ajilon Services, Inc., supra* (holding that doctor's orders that plaintiff "take frequent breaks to avoid stress [and] avoid prolonged overtime," do not establish that the plaintiff is substantially limited in the major life activity of working.)[11]

---

[11]  Plaintiff's attempt to discount his deposition testimony regarding having no present disabling condition at page 9 of his Response Brief by asserting that "[i]t is not a requirement for bringing suit under the ADA that the disability upon which one is taking action continues up to the date of the filing or during the pendency of litigation" is similarly without merit.  It is well settled that a medical condition that is temporary, even if it possibly may recur, does not constitute a substantial impairment under the Act. *See Plant v. Morton International, Inc.,* 212 F.3d 929, 938 (6th Cir. 2000);  *See also*, 29 C.F.R. § 1630.2(j) App.

Having failed to establish that his back condition substantially limited him in a major life activity, Plaintiff has not established that he is a disabled person within the meaning of the Americans with Disabilities Act.[12]  Accordingly, the Court finds that Plaintiff has failed to make out a *prima facie* case of discrimination under the ADA.[13]

------

[12]  Plaintiff also has argued that he qualifies for relief under § 12102(2)(C) of the Act because his employer "regarded" him as disabled.  However, the same "substantially limiting" standard that is required under subsection (A) of the statute also applies to be entitled to the Act's protection against being "regarded" as disabled in subsection (C) as well as with the "record of impairment" in subsection (B).  As with actual disabilities, a perceived impairment must be believed to substantially limit a major life activity of the individual.  *See Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1230 (11th Cir. 1999); *Ross v. Campbell Soup Co.*, 237 F.3d 701, 709 (6th Cir. 2001) ("It is not enough that the employer regarded [the plaintiff] as somehow disabled; rather the plaintiff must show that the employer regarded [him] as disabled within the meaning of the ADA."  (Citations omitted)); *Henderson v. Ardco, Inc.*, 247 F.3d 645, 650 (6th Cir. 2001) ("[T]o be regarded as substantially limited in the major life activity or working, one must be regarded as precluded from more than a particular job."  *Id.*, quoting *Murphy v. United Parcel Serv.,* 527 U.S. 516, 523 (1999)).  *See also, Merit v. Southeastern Pennsylvania Transit Authority*, 315 F. Supp. 2d 689 (E.D. Pa. 2004) (terminated transit employee who had a back injury and suffered from asthma and migraine headaches failed to establish that she had a record of disability as required under the ADA where she failed to present evidence that her back injury, asthma or headaches substantially limited her in any life activity); *Couts v. Beaulieu Group, LLC*, 288 F. Supp. 2d 1292 (N.D. Ga. 2003) (a substantially limiting impairment is required to support an ADA claim under a "record of impairment" theory).  Therefore, even under his alternative "regarded as" or "record of impairment" theories, Plaintiff fails to make out a *prima facie* claim.

[13]  Even assuming *arguendo* that Plaintiff had established that his back condition substantially limited him in the life activity of working, an employee cannot compel a specific accommodation if he is offered another reasonable accommodation.  *See Hankins v. The Gap, Inc.,* 84 F.3d 797, 800-801 (6th Cir. 1996) (citing *Ansomia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68-69, 107 S.Ct. 367, 371-72 (1986).  Although an employee is not required to accept an offered accommodation, "if such individual rejects

C.    PLAINTIFF SIMILARLY HAS FAILED TO ESTABLISH A *PRIMA FACIE* VIOLATION OF THE PWDCRA

Like the ADA, the PWDCRA prohibits an employer from discriminating against an employee because of a disability that is unrelated to the employee's ability to perform the duties of his job, M.C.L. § 37.1201(d)(1)(b), and imposes a duty on the employer to accommodate an individual's disability absent undue hardship on the employer. *Id*. § 37.1201(1)(g) (prohibiting discrimination "when adaptive devices or aids may be utilized thereby enabling that individual to perform the specific requirements of the job")

To establish a *prima facie* case of discrimination under the Michigan statute, a plaintiff must show that (1) he is "disabled" as defined by the statute, (2) the disability is unrelated to the plaintiff's ability to perform the duties of a particular job, and (3) the plaintiff has been discriminated against in one of the ways set forth in the statute. *Chiles v. Machine Shop, Inc.,* 238 Mich. App. 462, 473, 606 N.W.2d 398, 405(1999).  Before a court can address any alleged discrimination under the Act, the plaintiff must establish that he is the type of person to which the statute was meant to pertain--a person with a "disability." *Id.*

As with the ADA, the PWDCRA protects only against discrimination based on

_____

a reasonable accommodation. . . the individual will not be considered a qualified individual with a disability."  29 C.F.R. § 1630.9(d).  Here, Plaintiff was offered several reasonable alternative accommodations, including transferring to a route on which Truck 1153 -- the very truck that he wanted -- was deployed, but he refused to do so. Therefore, whether he was substantially impaired or not, because he rejected a reasonable accommodation, he is not a qualified individual with a disability entitled to the protections of the ADA.

18

physical or mental disabilities that substantially limit a major life activity of the disabled

individual.[14]  *Peden v. City of Detroit*, 470 Mich. 195, 680 N.W.2d 857, 863

(Mich.2004); *Sanchez v. Lagoudakis*, 458 Mich. 704, 581 N.W.2d 257, 262 (1998);

*Chiles v. Machine Shop, Inc., supra*.

As with the federal statute, not every impairment rises to the level of a disability

under the PWDCRA, nor does the "mere assertion of diminished capacity" constitute a

disability under the Act.  *Chiles, supra*, 238 Mich App. at 474, 606 N.W.2d at 405.  The

impairment must significantly restrict an individual's ability to perform at least a wide

range of jobs, and must meet the requirements of the statutory definition of "disability."

*Id.* at 474, 478.  The *Chiles* court specifically addressed the same kind of impairment

alleged by Plaintiff in this case -- lower back injury -- and in that case held that the

plaintiff whose work restrictions following an on-the-job accident had been lifted and

---

[14]  The PWDCRA defines a "disability" as follows:

(i) A determinable physical or mental characteristic of an individual which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic:

(A) . . . <u>substantially limits 1 or more of the major life activities of that individual</u> and is unrelated to the individual's ability to perform the duties of a particular job or position or substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's qualifications for employment or promotion.

* * *

(iii) Being regarded as having a determinable physical or mental characteristic described in subparagraph (i).

M.C.L. § 37.1103(d).

who continued to perform the same work he had performed prior to his injury only had

suffered a temporary impairment and, as such, was not disabled within the meaning of

the PWDCRA.  The court explained:

> [Next], we determine whether [the plaintiff's] back injury
> "substantially" limited a major life activity.
>
> * * *
>
> Reading the statutory language plainly, an impairment cannot be
> "substantial" if it is of a merely temporary nature.  The types of
> impairments that are generally temporary are often commonly shared by
> many in the general public--nearly everyone suffers temporary injuries or
> maladies at some point in life. Yet the intent of the Legislature here, as well
> as that of Congress with the federal disability discrimination statutes, was
> that disability discrimination claims be available only to those with
> characteristics that are not commonplace and are not directly related to
> ability to do the job. The Fourth Circuit Court of Appeals aptly stated the
> problem with temporary impairments:
>
> > Applying the protections of the ADA to temporary
> > impairments, such as the one presented here [lower back
> > injury],would work a significant expansion of the Act. The
> > ADA simply was not designed to protect the public from all
> > adverse effects of ill-health and misfortune. Rather the ADA
> > was designed to assure that truly disabled, but genuinely
> > capable, individuals will not face discrimination in
> > employment because of stereotypes about the
> > insurmountability of their handicaps.  Extending the statutory
> > protections available under the ADA to individuals with
> > broken bones, sprained joints, sore muscles, infectious
> > diseases, or other ailments that temporarily limit an
> > individual's ability to work would trivialize this lofty
> > objective.
>
> *Halperin* [*v. Abacus Technology Corp*., 128 F.3d 191,] 200 [(4th Cir.
> 1997)].

This commentary applies equally well to the PWDCRA, which this Court has determined has a purpose and language similar to that of the ADA. . . .   The inclusion of common ailments and injuries would mean that nearly everyone would qualify as "disabled" at some time during their life. Allowing nearly everyone to take advantage of the PWDCRA would undermine the purpose of the act itself, which was to assure that the "truly disabled" will not face discrimination because of stereotypes.  The larger the class of "protected individuals," the less significant the PWDCRA can be in "equaling the playing field" for those individuals suffering from the most severe and genuinely intractable disabilities. Although we do not adopt any bright-line rule for determining the exact length of time required for "substantial duration" and do not purport to define what types of impairments would qualify as "commonplace," we nonetheless conclude that the term "disability" embodied in the PWDCRA connotes some sense of permanency. Therefore, where an impairment is temporary and relatively easily remedied, when considered in the greater scheme of potential impairments, such as with a temporary back injury, such an ailment is not a substantial limitation on any major life activity.

238 Mich. App. at 479-482, 606 N.W.2d at 408-410 (citations and some internal punctuation omitted).

Applying the foregoing authorities, the Court finds that the same facts which defeat Plaintiff's ADA likewise defeat his PWDCRA claim.  Plaintiff's back impairment did not rise to the level of a "disability" cognizable under the Michigan Act.

<u>CONCLUSION</u>

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment is GRANTED.  Accordingly,

IT IS FURTHER ORDERED that Plaintiff's Amended Complaint be, and hereby is, DISMISSED in its entirety, with prejudice.

21

Let Judgment be entered accordingly.


s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated:  August 18, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 18, 2005, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager